**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HELENE KARAFIN GABRIELE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EATON CORPORATION PLC, ALEXANDER CUTLER, and RICHARD FEARON,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Helene Karafin Gabriele ("Plaintiff"), by and through her undersigned counsel, alleges the following individually and on behalf of a class of all persons and entities similarly situated, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's allegations are based upon the investigation of Plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Eaton Corporation plc ("Eaton" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. This is a class action brought on behalf of all persons or entities who purchased or otherwise acquired the publicly traded securities of Eaton between November 13, 2013 and July

28, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Eaton is an Ireland-based manufacturer of engineered products marketed to customers in the industrial, agricultural, construction, aerospace, and vehicle markets. The Company's products include hydraulic equipment, fluid connectors, electrical distribution equipment, and engine components.

3. For most of its 100-year history, Eaton was primarily a vehicle component manufacturer. Since 2008, however, the Company has been making strategic shifts away from its vehicle business, while growing its electrical component businesses. Investors in Eaton expected the Company to further this strategic realignment and increase corporate value by spinning off at least part of its vehicle component manufacturing business.

4. In 2012, the Company engaged in a merger (the "Merger") with Irish-headquartered Cooper Industries plc ("Cooper"), which reincorporated the Company in Ireland.

5. During the Class Period, in response to questions regarding the effect of the Merger on the Company's ability to spin-off its businesses, Eaton executives falsely assured investors and the market of the continued feasibility of divesting the Company's automobile-part manufacturing business on a tax-free basis. This prospect was key to investors' and analysts' ability to value the Company. As a result, Eaton and its executives artificially inflated the price of Eaton stock.

6. On July 29, 2014, Eaton Chief Executive Officer Alexander M. Cutler, after years of misleading the market regarding its unfettered ability to undertake a tax-free spin-off, finally informed investors that, contrary to the Company's prior assurances, Eaton could not, in fact, feasibly divest its vehicle business until late 2017 due to tax-law restrictions related to the Merger

with Cooper. Defendant Cutler further revealed that the Company had been "***well aware***" of these restrictions "***all along***."

7. On this news, the price of Eaton shares dropped from $76.75 per share to $70.51 per share, or 8.13%, erasing nearly $3 billion from the Company's market capitalization.

8. As a result of Defendants' (as defined herein) wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 28 U.S.C. § 1331 (15 U.S.C. § 78a(a)).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District, and the Company's common stock is listed on an exchange located in this District.

12. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13. Plaintiff, as set forth in the attached certification, purchased the common stock of Eaton during the Class Period, and was damaged as the result of Defendants' wrongdoing as alleged in this complaint.

14. Defendant Eaton is a corporation organized under the laws of Ireland, and maintains its principle executive offices at 30 Pembroke Road, Dublin 4, Ireland. The Company's stock is listed on the New York Stock Exchange (the "NYSE") under the ticker symbol "ETN." Prior to its 2012 reincorporation in Ireland, the Company had been incorporated in Ohio.

15. Defendant Alexander M. Cutler ("Cutler") served as the Chairman and Chief Executive Officer of Eaton at all relevant times.

16. Defendant Richard H. Fearon ("Fearon") served as the Vice Chairman and Chief Financial Officer of Eaton at all relevant times.

17. Defendants Cutler and Fearon are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Eaton's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market. Both Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements

pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18. The Individual Defendants and Eaton are referred to collectively as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Eaton Acquires Cooper Industries plc and Affirms the Potential to Spin-Off its Vehicle Business

19. On May 21, 2012, Eaton announced its agreement to acquire Cooper, an Ireland-based electrical product manufacturer, for $11.8 billion. Under the Merger agreement, Eaton would acquire Cooper through the formation of a new Irish holding company resulting in Eaton's reincorporation in Ireland and the re-domiciling of its headquarters from Cleveland, Ohio to Dublin, Ireland—a change that purportedly allowed Eaton to lower its corporate tax rate.

20. Following the Merger announcement, during investor conference calls, analysts sought to confirm that the transaction ***would not*** prevent Eaton from engaging in a lucrative spinoff of its vehicle business.[1] Investors and analysts recognized the value-creating potential of such a spin-off. As a result, analysts specifically asked whether it still would be feasible to engage in such a transaction in the Company's post-Merger regulatory environment.

21. For example, on May 21, 2012, Eaton held an investor call to discuss the Merger. During the call, analyst Mario Gabelli of Gabelli & Co. asked Defendant Cutler the following: "Are you precluded by any element of the tax structure of the deal to spin off the truck and automotive part at any time?" In response, Defendant Cutler stated: "There is nothing in the deal *per se* that would prevent us from taking portfolio moves, but we have no such plans."

[1] A spin-off is a type of divestiture that involves a parent company distributing shares of its subsidiary to shareholders on a pro rata basis. Unlike most corporate divestitures such as subsidiary stock sales and asset sales, spin-offs often qualify as tax-free events.

22. Thereafter, on October 31, 2012, Eaton held an investor call to discuss its third-quarter 2012 financial results. During the call, analyst Steve Volkmann of Jeffries & Company asked Defendant Cutler the following: "In 2013 is there anything from a regulatory basis vis-a-vis, I guess, the acquisition of Cooper that would prevent you from doing additional divestitures if you wanted to?" In response, Defendant Cutler stated: "No. There wouldn't be any—no regulatory restrictions."

23. On November 13, 2012, at the Goldman Sachs Industrials Conference, an unidentified member of the audience asked the following question:

> There's obviously a lot of consideration from the sell-side in terms of change in business model, which you guys have stressed that the three core businesses are now our majority. There is a lot of talk of the ability to divest businesses that you may not necessarily think are core any more or to change the profile of the Company. The stock, it seems to be reflecting a lot of that, I mean what is the thought in terms of the ability if you decided to sell some of those businesses? Is it a spin out? There is a market to be able to sell and what's your thought on things like that?

In response, Defendant Cutler stated: "Yes, there is nothing structural in our deal structure or any of our covenants that, it prevents us from making changes in our portfolio . . . ."

24. On September 17, 2013, at the Morgan Stanley Industrials & Autos Conference, analyst Nigel Coe of Morgan Stanley highlighted the market's confidence in Eaton's structural flexibility based on months of Company assurances, stating: "I mean obviously there have been some questions from some investors about the portfolio vehicle, hydraulics and I am not going to go there because I think you have address that quite well publicly. But in terms of the electrical portfolio, are you now done?" In response, Defendant Fearon agreed and further touted Eaton's favorable tax position, stating:

> Oh, I think that is a fair observation. I mean we – our product position is very strong in low and medium voltage electrical equipment, it is very strong in power quality equipment. We have pockets of strength in

> industrial controls. But it depends a bit geographically where you look at that. And if you look at automation, I mean we really are very much either not present or just modestly present in automation type equipment.
>
> So if you think about where does this electrical business go? Well, we can clearly round out our participation in various geographic parts of the world where we have a lesser presence. You can think of places like India or Brazil where there definitely are opportunities to extend our presence using our product and solution capability. There are obviously still opportunities to consolidate in low and medium voltage us [sic] well as power quality.
>
> And I think it is a fair question, Nigel, about whether there are some additional products that could logically be added to this complex of products. We have certainly Schneider does have a significant automation business and I think automation is the kind of business that you don't have to be in but you could be in. It is an opportunity more than an imperative. And we are excited to get the Cooper integration behind us in a state where we can begin to think about what are the next steps.

25. As time passed, analysts began to anticipate that Eaton was nearing a spin-off of its vehicle business. For example, in an October 28, 2013 analyst report, UBS analyst Jason Feldman asserted that, "[w]e [ ] believe a spin-off or sale of the [Eaton] Vehicle segment is possible over the next 12-18 months and could be a positive catalyst for the stock."

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

26. On November 13, 2013, the first day of the Class Period, Defendants once again reaffirmed the feasibility of a vehicle business spin-off. At the Goldman Sachs Industrial Conference, in response to an analyst question about whether the Company was considering divesting its vehicle business and whether it viewed the vehicle business as a "sacred cow," Defendant Fearon stated:

> In terms of your second question about vehicle, is it a sacred cow? Well, first of all, I'd say nothing is a sacred cow. You have seen us over the last 15 years make pretty major portfolio shifts. We have sold or spun businesses that had roughly $1.5 billion of revenues. We've bought businesses that had $12 billion of revenues. And so we have had [sic] made major changes. We have a systematic process of looking at where those kinds of actions would benefit us and a process, particularly on the acquisition side, of keeping our

> hand in various situations so that when the opportunity naturally arises for a transaction, we can act. . . . [W]e are continuing those processes. If we believe that a business is better owned by somebody else, we will not be afraid to act on that.

27. On February 26, 2014, the Company filed its Annual Report with the SEC on Form 10-K for the year ended December 31, 2013. Eaton's Form 10-K did not correct the Company's prior statements about the feasibility of a divestiture of its vehicle business.

28. On May 5, 2014, the Company filed its Quarterly Report with the SEC on Form 10-Q for the quarterly period ended March 31, 2014. Eaton's Form 10-Q did not correct the Company's prior statements about the feasibility of a divestiture of its vehicle business.

29. The statements contained in ¶¶ 26-28 were materially false and/or misleading when made because Defendants failed to disclose or indicate that the Company could not feasibly execute a tax-free spin-off of its vehicle business.

**<u>The Truth Emerges</u>**

30. On July 29, 2014, during a the second quarter 2014 earnings call with investors, Defendant Cutler finally admitted that, as a result of the Merger, the Company faced a five-year restriction on tax-free spin-offs—effectively barring any profitable spin-off of the Company's subsidiaries—stating that, ***"we also wanted to clarify that we are not able to do a tax-free spin[off] of any business for five years."*** He went on to explain that "any spin[off] would result in a very significant tax liability" and "this five year kind of prohibition . . . means that there is not really a compelling economic rationale for further business portfolio transformation."

31. On that same call, Defendant Fearon stated: "Because of the legal steps we had to do to complete the transaction for Cooper, there are a couple of code sections that make it not possible to do a tax free spin for five years."

32. On the same call, Defendant Cutler admitted that the Company knew of this prohibition for years: "***[I]t's not new knowledge. We've been well aware of this all along***."

33. On this news, the price of Eaton shares dropped $6.24 per share, or 8.13 percent, to close at $70.51 per share on July 29, 2014.

34. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired the securities of Eaton between November 13, 2013 and July 28, 2014, inclusive (the "Class"). Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Eaton, and the directors and officers of Eaton and their families and affiliates at all relevant times.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of March 31, 2016, Eaton had 458.0 million shares of common stock outstanding.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the Exchange Act was violated by Defendants;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e) Whether the price of Eaton securities was artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

38. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

39. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation. Plaintiff has no interests that conflict with those of the Class.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## UNDISCLOSED ADVERSE FACTS

41. The market for Eaton's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Eaton's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Eaton's securities relying upon the integrity of the market price of the Company's securities and market information relating to Eaton, and have been damaged thereby.

42. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Eaton's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. These statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Eaton's business, operations, and prospects as alleged herein.

43. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Eaton's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

44. During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Eaton securities, and operated as a fraud or deceit on Class Period purchasers of Eaton securities by misrepresenting the value and prospects for the Company's business, growth prospects, and accounting compliance. Later, when Defendants' prior misrepresentations and

fraudulent conduct were disclosed to the market, the price of Eaton securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of Eaton securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## ADDITIONAL ALLEGATIONS REGARDING SCIENTER

45. During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

46. The Individual Defendants permitted Eaton to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's stock.

47. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Eaton, their control over, receipt, and/or modification of Eaton's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Eaton, participated in the fraudulent scheme alleged herein.

48. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Eaton common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.

The scheme deceived the investing public regarding Eaton's business, operations, and management and the intrinsic value of Eaton securities and caused Plaintiff and members of the Class to purchase Eaton securities at artificially inflated prices.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Eaton who knew that the statement was false when made.

## PRESUMPTION OF RELIANCE

50. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's stock traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e) Plaintiff and other members of the Class purchased Eaton securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

51. At all relevant times, the markets for Eaton securities were efficient for the following reasons, among others:

(a) as a regulated issuer, Eaton filed periodic public reports with the SEC;

(b) Eaton regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c) Eaton was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d) Eaton common stock was actively traded in an efficient market, namely the NYSE, under the ticker symbol "ETN."

52. As a result of the foregoing, the market for Eaton securities promptly digested current information regarding Eaton from all publicly available sources and reflected such information in Eaton's stock price. Under these circumstances, all purchasers of Eaton securities

during the Class Period suffered similar injury through their purchase of Eaton's securities at artificially inflated prices and the presumption of reliance applies.

53. Further, to the extent that the Exchange Act Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants

54. Plaintiff repeats, incorporates, and realleges paragraphs 1 through 53 by reference.

55. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Eaton securities during the Class Period.

57. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Eaton securities. Plaintiff and the Class would

not have purchased Eaton securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

58. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Eaton securities during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act <br> Against the Individual Defendants

59. Plaintiff repeats, incorporates, and realleges paragraphs 1 through 58 by reference.

60. The Individual Defendants acted as controlling persons of Eaton within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions and their power to control public statements about Eaton, the Individual Defendants had the power and ability to control the actions of Eaton and its employees. By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23;

B. Awarding Plaintiff and the members of the Class damages and interest;

C. Awarding Plaintiff's reasonable costs, including attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 11, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Helene Karafini Gabriele, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Eaton Corporation plc ("Eaton" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Eaton securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Eaton securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Eaton securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed AUGUST 9, 2016
(Date)

Helene Karafin Gabriele
(Signature)

HELENE KARAFIN GABRIELE
(Type or Print Name)

**EATON CORPORATION PLC (ETN)** **Gabriele, Helene Karafin**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 5/21/2014 | Purchase | 70 | $72.8900 |